UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

July 29, 2024

VIA ECF

**LETTER ORDER**

Re: **Kacy Knight on behalf of himself and all others similarly situated v. Meta Platforms, Inc.
Civil Action No. 23-13347**

Dear Litigants:

Before the Court is Defendant Meta Platforms, Inc.'s ("Defendant" or "Meta") Motion to Dismiss Plaintiff Kacy Knight's ("Plaintiff") Complaint, ECF No. 1, pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). ECF No. 10. Plaintiff opposes. ECF No. 11. For the reasons explained below, the Motion is **GRANTED**.

**I.    BACKGROUND**

Plaintiff alleges that for advertising purposes, Meta unlawfully collected sensitive data from its users who visited the New Jersey Motor Vehicle Commission ("MVC") website. See generally Compl. He brings this proposed class action pursuant to the Drivers' Privacy Protection Act, 18 U.S.C. § 2721, et seq. (the "DPPA").

In operating Facebook, Meta collects information about users logged into the platform. Compl. ¶ 1; see also id. ¶¶ 14–15, 40–42. Plaintiff alleges that a piece of web-based code called the Meta Tracking Pixel (the "Pixel") "collect[s] information about what those users do when they are off the [Facebook] site." Id. ¶ 2. Meta then uses that information to deliver targeted advertisements on its social media platforms. Id. ¶ 3.

The New Jersey MVC is a government website that hosts the Pixel and transmits user data to Meta. Id. ¶ 20. According to Plaintiff, the MVC website collects information about three actions—also known as "events"—that users take: (1) a specific website URL that a user has navigated to ("Page View"); (2) the title of the webpage and a description of its contents ("Microdata"); and (3) if and when a user clicks on a particular button on a webpage ("Button Click"). Id. ¶¶ 20–22.

Plaintiff alleges that these events "convey a trove of information about a driver's personal business with the MVC," including "whether a particular driver is seeking to schedule an appointment for a driver road or written test, to obtain a new car registration, is seeking to renew a driver or commercial vehicle license, is seeking to have their license reinstated, and various other

actions." Id. ¶ 25.  This event data also allegedly contains "highly restricted personal information," including whether a particular driver has clicked on the "Application for Vehicle License Plate and/or Placard for Persons with a Disability."  Id. ¶ 26.

For every event transmitted through the Pixel, Meta also collects first-party "computer cookies" specific to a particular user.[1]  Id. ¶ 39.  The "c_user cookie" contains a user's unencrypted Facebook ID, meaning that anyone can link the cookie to the user's corresponding Facebook profile.  Id. ¶¶ 27–29.  The "fr cookie" contains an encrypted Facebook ID and browser identifier.  Id. ¶¶ 30–32.[2]

Plaintiff specifically alleges that he used the New Jersey MVC website between 2022 and 2023 to book appointments and conduct other business.  Id. ¶ 43.  Plaintiff pleads that he navigated the website using the same browser that he used to access his Facebook account.  Id. ¶ 44.  According to Plaintiff, while he was visiting the MVC website, "Meta obtained and used his personal information, along with various event data, including PageView, [M]icrodata and Button Click . . . [and] obtained and used identifiers for Plaintiff Knight including the c_user and fr cookies to Meta, as first-party cookies on his web browser."  Id. ¶ 45.  Meta allegedly used this information to fuel its advertising efforts.  Id. ¶ 46.

On August 30, 2023, Plaintiff filed this action against Meta for violations of the DPPA.  Id. ¶¶ 55–64.  Plaintiff seeks monetary and injunctive relief on behalf of himself and "all persons in the United States who have Facebook and visited [the New Jersey MVC website] after August 30, 2019."  Id. ¶¶ 48, 64.  The instant Motion followed.

## II.   LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted).  To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

---

[1] The Complaint defines "first-party" cookies as those "created by the website the user is viewing," i.e., "cookies directly stored by the New Jersey MVC website."  Id. ¶¶ 36, 59.

[2] Defendant requests that the Court take judicial notice of its Terms of Service, Privacy Policy, Cookies Policy, and Business Tools Terms, or in the alternative, incorporate by reference Meta's Cookies Policy.  ECF No. 10.7.  The Court declines to do so, as Plaintiff does not explicitly challenge those policies in his cause of action.  See Kamden-Ouaffo v. Hucarro, No. 16-8859, 2017 WL 11724428, at *2 (D.N.J. Jan. 13, 2017) (declining to take judicial notice of irrelevant facts); Davis v. Meta Platforms, Inc., No. 23-01352, 2024 WL 3293644, at *7 (D. Nev. July 3, 2024) (declining to incorporate by reference Meta's Cookies Policy because it did not form the basis of the plaintiff's allegations).

### III. ANALYSIS

The DPPA "establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent." Maracich v. Spears, 570 U.S. 48, 57 (2013) (internal quotation marks and citations omitted). Congress enacted the statute in part to address "the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." Id. To bring a DPPA claim, Plaintiff must allege that Meta (1) obtained or used "personal information," as defined by the statute; (2) "from a motor vehicle record," as defined by the statute; (3) for an improper purpose not permitted by the statute; and (4) did so "knowingly." See 18 U.S.C. § 2724(a); Pichler v. UNITE, 542 F.3d 380, 391 (3d Cir. 2008).

As an initial matter, Defendant argues that the MVC website is not a "motor vehicle record" under the DPPA, and therefore cannot serve as the basis for a DPPA claim. Def's. Br., ECF No. 10.1, at 11–16. The Court agrees.

The statute defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). Consistent with that definition, Plaintiff alleges that "[w]ebpages on the New Jersey MVC website are a type of 'motor vehicle record' within the ambit of the DPPA, because they contain records that pertain to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification cards issued by the New Jersey MVC." Compl. ¶ 58.

The Court is not convinced that the New Jersey MVC webpages are "records" as defined by the DPPA. The MVC website appears to be a public-facing, government website accessible to any individual searching the internet. See Compl. ¶ 20. In considering analogous facts, courts have found that such a website does not in itself maintain information about an individual and thus does not qualify as a "record" under the DPPA. See Keogh v. Meta Platforms, Inc., 680 F. Supp. 3d 601, 609–10 (S.C.D.C. 2024); Dye v. Meta Platforms, Inc., No. 23-509, 2024 WL 2125602, at *3 (E.D.N.C. May 10, 2024); Davis, 2024 WL 3293644, at *3–4.

Nor is the New Jersey MVC website a "motor vehicle" record, as it does not independently pertain to an individual's permit, motor vehicle title, motor vehicle registration, or identification card. See 18 U.S.C. § 2725(1). To the extent Plaintiff suggests that the webpages have a "connection with driving," that does not transform them into the specific types of motor vehicle records listed in the statute. See Keogh, 680 F. Supp. at 610; Dye, 2024 WL 2125602, at *3.[3]

---

[3] Plaintiff relies on Gershzon v. Meta Platforms, Inc. to argue that the New Jersey MVC website constitutes a "motor vehicle record." No. 23-00083, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023). But those facts are distinguishable. In Gershzon, the plaintiff alleged that (1) on the state's DMV website, he provided his personal information to create a "MyDMV" account and applied for a disability parking placard; (2) the website maintained that information in a database; and (3) Meta obtained the plaintiff's information through the website. Id. at *3, *7. Moreover, the court stated that a disability parking placard (and application thereof) pertains to a motor vehicle operator's permit. Id. at *8. By contrast, Plaintiff here does not allege that he input any of his information into the MVC website or that the MVC website maintains a database or account from which Meta could obtain such information. And Plaintiff does not allege that he took any action on the MVC website other than to "book appointments" and "conduct other private business." See Compl. ¶ 43. Those actions do not implicate any motor vehicle record listed in the DPPA.

Finally, even if the New Jersey MVC website is considered a "motor vehicle record," Plaintiff does not sufficiently allege that Meta obtained his personal information directly "from" that record. It is not clear from the Complaint where exactly cookies are generated—from Plaintiff's web browser or the New Jersey MVC website. Compare Compl. ¶ 27 ("[T]he MVC website compels a visitor's browser to transmit an identifying "computer cookie" to Meta called "c_user," for every single event sent through the Meta Tracking Pixel.") with id. ¶¶ 36, 59 (alleging that first-party cookies are created and directly stored by the website a user is visiting). In any event, the information contained in the cookies—i.e., Plaintiff's Facebook ID—was not pulled "from" the New Jersey MVC website. See Keogh, 680 F.Supp. 3d at 612. ("[The] [p]laintiff's Facebook account number did not come 'from' a 'motor vehicle record' - regardless of how the 'cookies' which included the number were generated."). Although Plaintiff's online activity may have resulted in his Facebook ID becoming associated with the MVC website, that is simply a byproduct of a Facebook user searching on the internet. See id.

Therefore, Plaintiff does not adequately allege that Meta retrieved his personal information "from a motor vehicle record" in violation of the DPPA.[4]

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, ECF No. 10, is **GRANTED** and Plaintiff's Complaint is **DISMISSED** without prejudice. Plaintiff may replead within 30 days of this Order to cure the deficiencies of his Complaint as discussed herein.

**SO ORDERED.**

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[4] Because Plaintiff does not sufficiently allege that Meta obtained his information from a motor vehicle record, the Court need not address Defendant's remaining arguments.

4